# EXHIBIT D

Case 25-10046-djb    Doc 47-5    Filed 04/23/25    Entered 04/23/25 14:17:19    Desc
Exhibit D- Recorded Mod    Page 2 of 11

BeaorMod PAge 2 of 11A    Doc Id: 54256991
01/02/2024 08:28 AM    Page 1 of 10    Rec Fee: $259.75
Receipt#:
Records Department    Doc Code:

RELEASED

NS WAREHOUSE
DEUTSCH

Recording Requested By/Return To:
**RIGHTPATH SERVICING**
**999 TECH ROW, #200**
**MADISON HEIGHTS, MICHIGAN**
**48071**
833-685-2590

This Instrument Prepared By:
**RIGHTPATH SERVICING**
**8950 CYPRESS WATERS BLVD.**
**COPPELL, TX 75019**

Parcel Identification Number:

———————————— [Space Above This Line For Recording Data] ————————————

**Document Date: 11-20-2023**

## LOAN MODIFICATION AGREEMENT

Property Address: 3 N
COLUMBUS BLVD PL263,
PHILADELPHIA, PENNSYLVANIA
19106

Loan Number
FHA Case Number

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF JANUARY, 2024**, between **ROBIN D NOVAK** ("Borrower"), and **RIGHTPATH SERVICING** ("Lender"), whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), if any, dated **DECEMBER 05, 2017** and recorded in **RECORDED DATE : 12/08/2017 INSTRUMENT NUMBER : 53301553** and (2) the Note in the original principal sum of U.S $228,123.00, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**3 N COLUMBUS BLVD PL263, PHILADELPHIA, PENNSYLVANIA 19106**
(Property Address)

the real property described being set forth as follows:
**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN UNIT DESIGNATED AS UNIT NUMBER PL263 BEING A UNIT IN PIER 3 CONDOMINIUM, A CONDOMINIUM CREATED PURSUANT TO THE PROVISIONS OF THE UNIFORM CONDOMINIUM ACT, 68 PA. C.S. SECTION 3101 ET. SEQ. AS A LEASEHOLD CONDOMINIUM, SITUATE IN THE CITY AND COUNTY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, AS DESIGNATED IN THE DECLARATION OF CONDOMINIUM FOR PIER 3**

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179
1/01 (rev. 10/16)

(page 1 of 9)

Loan Number ▮

CONDOMINIUM, A CONDOMINIUM, AND THE PLATS AND PLANS ATTACHED THERETO AND INCORPORATED THEREIN AS EXHIBIT "C" WHICH DECLARATION OF CONDOMINIUM WAS DATED AS OF THE FIRST DAY OF AUGUST A.D. 1986 AND RECORDED IN THE DEPARTMENT OF RECORDS IN AND FOR THE COUNTY OF PHILADELPHIA (THE "RECORDER'S OFFICE") ON THE TWENTY-NINTH DAY OF AUGUST 1986 IN DEED BOOK F.H.S. NO. 566 PAGE 474 AS SUCH DECLARATION WAS AMENDED AND RESTATED BY A CERTAIN AMENDED AND RESTATED DECLARATION OF CONDOMINIUM, DATED AS OF MARCH 24, 1994 AND RECORDED IN THE RECORDER'S OFFICE ON MAY 6, 1994 IN BOOK VCS 566 PAGE 384; AND AMENDED AND RESTATED BY A CERTAIN AMENDED AND RESTATED DECLARATION OF CONDOMINIUM, DATED AS OF AUGUST 3, 2011, AND RECORDED IN DOCUMENT ID NO. 52380496. TOGETHER WITH ALL RIGHT, LEASEHOLD, TITLE AND INTEREST, BEING A .4559 PERCENT UNDIVIDED INTEREST OF, IN AND TO THE COMMON ELEMENTS, AS SET FORTH IN THE AFORESAID DECLARATION OF CONDOMINIUM, AS AMENDED. TOGETHER WITH ALL RIGHT, LEASEHOLD, TITLE AND INTEREST, BEING A .4559 PERCENT UNDIVIDED INTEREST OF, IN AND TO THE COMMON ELEMENTS, AS SET FORTH IN THE AFORESAID DECLARATION OF CONDOMINIUM, AS AMENDED. AND TOGETHER WITH ALL RIGHT, LEASEHOLD TITLE AND INTEREST OF, IN, AND TO THE LIMITED COMMON ELEMENTS DESIGNATED FOR SAID UNIT IN THE AFORESAID DECLARATION OF CONDOMINIUM AND PLATS AND PLANS.

Modification Effective Date: JANUARY 01, 2024
Original Mortgage Amount: $228,123.00

Tax Parcel No.: ▮

In consideration of mutual promises and agreements exchanged, and other good and valuable consideration which the parties agree they have received, the Borrower and Lender agree to modify the terms of the Note and Security Instrument as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **JANUARY 01, 2024**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$243,559.98**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **7.7500%**, from **DECEMBER 01, 2023**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,647.98**, beginning on the **1ST DAY OF JANUARY, 2024**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **7.7500%** will remain in effect until principal and interest are paid in full. If on **DECEMBER 01, 2063**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

   The terms in this paragraph shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate or for a graduated or growing-equity payment schedule.

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179
1/01 (rev. 10/16)

(page 2 of 9)

Loan Number

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower may make a full prepayment or partial prepayments without paying any prepayment charge. Lender will use the prepayments to reduce the amount of principal that Borrower owes under the Note. However, Lender may apply the Prepayment to the accrued and unpaid interest on the prepayment amount before applying the prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or the amount of the monthly payments unless Lender agrees in writing to those changes.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Agreement Date set forth above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179
1/01 (rev. 10/16)

(page 3 of 9)

Loan Number

shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) If permitted by applicable law, all costs and expenses incurred by Lender in connection with this Agreement, including attorney's fees and costs, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower's information including, but not limited to (I) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

(g) In any foreclosure action dismissed as a result of entering into this Agreement, Borrower will remain liable for and bear his or her own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

(h) The mortgage insurance premiums on Borrower's Loan may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of the loan modification.

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179
1/01 (rev. 10/16)

(page 4 of 9)

Loan Number ▮▮▮▮▮

(i)    Any Borrower who co-signed the Security Instrument but did not execute the Note (a "Co-signer") and has not assumed the debt: (a) is co-signing this Agreement only to acknowledge the Agreement; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Security Instrument or the Note without the Co-signer's consent.

7. If Borrower is a Debtor in an active bankruptcy proceeding, Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the loan modification is required, the loan modification agreement will not be effective unless evidence of the required approval is provided.

8. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT     Form 3179
1/01 (rev. 10/16)

(page 5 of 9)

Loan Number ▮▮▮▮▮▮▮▮

estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

Whereof, Lender and Borrower have executed this Modification Agreement as of the dates indicated below.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Loan Number [REDACTED]

In Witness Whereof, the Borrower(s) have executed this agreement.

_____  Execution Date: 12/16/23
Borrower - ROBIN D NOVAK


State of PENNSYLVANIA
County of Philadelphia
     Enter County Here

On this, the 16th day of December, 2023, before me, the undersigned officer, personally appeared ROBIN D NOVAK, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seals.

Place Seal Below

_____
Notary Signature — Megan N. Chisenhall

_____
Notary Printed Name — Megan N. Chisenhall

| Commonwealth of Pennsylvania - Notary Seal |
| MEGAN N CHISENHALL - Notary Public |
| Philadelphia County |
| My Commission Expires December 22, 2026 |
| Commission Number 1429502 |

Title of Officer:  Notary Public

My Commission Expires: 12/22/2026

[ ] This notarial act involved the use of communication technology.


FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179
1/01 (rev. 10/16)

(page 7 of 9)

Loan Number: [REDACTED]

In Witness Whereof, the Lender has executed this Agreement.

Lender

**RIGHTPATH SERVICING**

By: _____

Printed Name: Jin Moo Binene

Title: Vice President

Execution Date: DEC 2 7 2023

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179
1/01 (rev. 10/16)

(page 8 of 9)

Loan Number ▓▓▓▓

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ **Jin Moo Binene** _____, Vice President of RightPath Servicing a Limited Liability Corporation before me on the _27_ day of _Dec_, _2023_.

Signature _Teodra Apopei_

Printed name ___ Teodora Apopei ___

Notary public, State of MICHIGAN, County of __ **Macomb** __

My commission expires __ **DEC 2 1 2028** __

Acting in the County of OAKLAND

---

TEODORA APOPEI
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires December 21, 2028
Acting in the County of _OAKLAND_

---

FHA LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179
1/01 (rev. 10/16)

(page 9 of 9)

**CERTIFICATE OF RESIDENCE** I, Lauri White, do hereby certify that the correct address of the within names lender is 8950 Cypress Waters Blvd., Coppell, TX 75019, witness my hand this 29th day of December, 2023.

*Lauri White*

Agent of Lender